# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

| | |
|---|---|
| JOSEPH BEARDSLEY, Individually and as Special Representative of the ESTATE OF REBECCA BEARDSLEY, And MICHELE KIPNIS, <br><br> Plaintiffs, <br><br> v. <br><br> ABBVIE, INC. and APOLLO ENDOSURGERY US, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) Civil Action ) ) NO. 3:20-cv-1159 ) ) ) ) ) ) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441 and § 1446, Defendants AbbVie, Inc. and Apollo Endosurgery US, Inc. ("Defendants") hereby remove this case from the Circuit Court for the Third Judicial Circuit for Madison County, State of Illinois, to the United States District Court for the Southern District of Illinois, East St. Louis Division. In support of this Notice of Removal, Defendants aver as follows:

## I.     BACKGROUND

1.     Plaintiffs Joseph Beardsley, individually and as Special Representative of the Estate of Rebecca Beardsley, and Michele Kipnis ("Plaintiffs") commenced this personal injury/wrongful death/product liability action by filing a Complaint on October 1, 2020 in the Circuit Court for the Third Judicial Circuit in Madison County, State of Illinois, entitled *Joseph Beardsley, individually and as Special Representative of the Estate of Rebecca Beardsley, and*

*Michele Kipnis v. AbbVie, Inc. and Apollo Endosurgery US, Inc.,* Cause No. 2020L 001397. A copy of the Complaint is attached hereto as Exhibit A.

2. Plaintiffs allege that Decedent Rebecca Beardsley was implanted with a device called the LAP-BAND® at the Balboa Naval Medical Center in San Diego, California on or about April 1, 2011, and that the LAP-BAND® had to be surgically removed from Ms. Beardsley at Loma Linda University Medical Center in San Diego, California on or about December 27, 2018. Plaintiffs further allege that the LAP-BAND® catheter had wrapped around Ms. Beardsley's small intestines causing a bowel obstruction necessitating emergency removal of the LAP-BAND® and port. Plaintiffs further allege that the LAP-BAND® had eroded into Ms. Beardsley's stomach, causing sepsis, stomach perforation, and necrosis. According to the Complaint, Ms. Beardsley died of her injuries on December 28, 2018. *See* Exhibit A, Complaint, ¶ 1.

3. Plaintiffs allege that Ms. Kipnis was implanted with a LAP-BAND® device at Scripps Memorial Hospital in La Jolla, California on or about October 8, 2012, and that the LAP-BAND® was removed from Ms. Kipnis at Scripps Memorial Hospital in La Jolla, California on or about September 5, 2018. Plaintiffs further allege that the LAP-BAND® had eroded into Ms. Kipnis' stomach, causing inflammation of her liver and stomach. *See* Exhibit A, Complaint at ¶ 3.

4. Plaintiffs allege that the LAP-BAND® was defective and assert causes of action against Defendant sounding in, *inter alia*, negligence, products liability, negligent misrepresentation, breach of warranty, fraud, and loss of consortium. *See* Exhibit A, Complaint, ¶¶ 84-318.

5. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. § 1332, and this action is removable pursuant to 28 U.S.C.§ 1441, in that, excluding fraudulently joined Defendant AbbVie, Inc. ("AbbVie"), it is a civil action between citizens of different states and the amount in controversy exceeds $75,000. The presence of an in-state defendant is not a bar to removal because AbbVie is fraudulently joined.

6. Pursuant to 28 U.S.C.§ 1446(a), copies of all process, pleadings, orders, and other papers or exhibits filed in state court are attached as Exhibit B.

## II.   THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1332(a)(1)

7. Section 1332(a)(1) provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States." 28 U.S.C. § 1332(a)(1). For the reasons set forth below, all of the jurisdictional requirements for diversity jurisdiction are satisfied in this case.

### A.   The Relevant Parties Are Completely Diverse

8. Cases fall within a federal court's diversity jurisdiction only if "diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998).

9. Both Plaintiff Joseph Beardsley, in his individual capacity, and Plaintiff Michele Kipnis are citizens of California.[1]  In addition, Decedent Rebecca Beardsley was a citizen of

---

[1] The Complaint alleges that Plaintiffs Joseph Beardsley and Michele Kipnis are residents of California, *see* Exhibit A, Complaint at ¶¶ 1, 3. In addition, the Complaint also alleges that Mr. Beardsley was at all relevant times lawfully married to Decedent Rebecca Beardsley. *Id.* at ¶ 1. The Complaint alleges that Ms. Beardsley's implantation procedure took place in California in April 2011 and that the removal of her device also took place in California more than seven years later in December 2018. *Id.* Similarly, the Complaint alleges not only that Plaintiff Michele Kipnis is a resident of California, *see* Exhibit A, Complaint at ¶ 3, but that both her implantation and explanation procedures took place in California, separated by nearly six years. *Id.* It is thus clear that both Plaintiffs are not only "residents" of California, but also citizens of that state. *See Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir.2009)

California, so that Plaintiff Joseph Beardsley in his capacity as Special Representative of the Ms. Beardsley's Estate is likewise a citizen of California. 28 USCA § 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent"); *Northern Trust Co. v. Bunge Corp.,* 899 F.2d 591, 594 (7th Cir.1990); *Trevino v. U-Haul Co. of Illinois, Inc.*, 2008 WL 4951321, at *2 (N.D. Ill. Nov. 18, 2008).

10. Defendant Apollo Endosurgery US, Inc. ("Apollo") is incorporated under the laws of the state of Delaware with its principal place of business in Texas. *See* Exhibit A, Complaint at ¶ 7. Therefore, Apollo is a citizen of the states of Delaware and Texas for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1).

### B. AbbVie Is Fraudulently Joined

11. Under the fraudulent joinder doctrine, a defendant's right of removal based on diversity jurisdiction cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim has "no chance of success." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992).

12. Here, Plaintiffs do not allege that AbbVie ever manufactured, sold, distributed, or had any other connection with the LAP-BAND® device. A Declaration submitted by AbbVie's Division Counsel, Governance, Emily Weith, states unequivocally that at no time did AbbVie ever manufacture, sell, distribute, or have any other connection with the LAP-BAND® product. *See* Ex. C, Weith Declaration at ¶ 4. It is well-established that courts may consider affidavits or declarations when evaluating fraudulent joinder. *See Faucett v. Ingersoll–Rand Mining & Mach. Co.,* 960 F.2d 653, 655 (7th Cir. 1992); *Bahalim v. Ferring Pharmaceuticals, Inc.*, 2017 WL

---

(citizenship shown by "a permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom").

118418, at *4 (N.D. Ill. Jan. 12, 2017); *Ballard v. Wilderness Resort Hotel & Golf Resort*, 2014 WL 3811003, at *2 n.4 (N.D. Ill. Aug. 1, 2014) (same); *Sargent v. Cassens Corp.*, 2007 WL 1673289, at *2 (S.D. Ill. June 7, 2007) (same).

13. Specifically, the Weith Declaration states that AbbVie did not manufacture, sell, distribute, or have any other connection with the LAP-BAND® device at any time prior to the alleged implantation of the device into either Ms. Beardsley or Ms. Kipnis, at any time prior to the alleged removal of the device from either Ms. Beardsley or Ms. Kipnis, or at any time in between. *See* Ex. C, Weith Declaration at ¶ 5. The Declaration further states that AbbVie never manufactured, sold, distributed, or had any other connection with the LAP-BAND® device at any time after the alleged removal of the device from either Ms. Beardsley or Ms. Kipnis. *Id*.

14. Plaintiffs do allege that the LAP-BAND® device was manufactured and sold by a company called Allergan USA, Inc. between 2006 and 2013. *See* Exhibit A, Complaint at ¶ 6. However, the Weith Declaration states that AbbVie had no corporate relationship, or other relationship, with Allergan USA, Inc. or any other Allergan entity at any time during which Plaintiffs allege that Allergan USA, Inc. manufactured or sold the LAP-BAND® device. *See* Ex. C, Weith Declaration at ¶ 7.

15. Plaintiffs also allege that in 2013, Allergan USA, Inc. sold its rights to the LAP-BAND® System to Apollo. *See* Exhibit A, Complaint at ¶ 6. The Weith Declaration states that AbbVie has had no corporate relationship, or other relationship, with Apollo at any time that Apollo has allegedly manufactured or sold the LAP-BAND® device. *See* Ex. C, Weith Declaration at ¶ 9.

16. Although Plaintiffs allege that AbbVie is the successor to Allergan USA, Inc., *see* Exhibit A, Complaint at ¶ 5, this is incorrect. *See* Ex. C, Weith Declaration at ¶ 10. On the contrary, Allergan USA, Inc. still exists, and therefore does not have a corporate successor. *Id.* at ¶ 11. On or about May 8, 2020, AbbVie did acquire Allergan plc, the ultimate indirect parent of Allergan USA, Inc. *Id.* However, at the time that AbbVie acquired Allergan plc, AbbVie did not acquire any rights with respect to the LAP-BAND® System. *Id.* at ¶ 12. Indeed, according to Plaintiffs' own allegations, any such rights were sold to Apollo in 2013. *See* Exhibit A, Complaint at page ¶ 6.

17. Both this Court and the District Court for the Northern District of Illinois have held that where a defendant did not manufacture, sell, or distribute a product, the plaintiffs cannot maintain their cause of action against the defendant, and therefore, the defendant "has been fraudulently joined." *Sargent v. Cassens Corp.,* 2007 WL 1673289, at *2-3 (S.D. Ill. June 7, 2007); *see also Bahalim,* 2017 WL 118418, at *4-5 (in light of the "unrefuted declaration" that the defendant "did not manufacture, promote, distribute, or sell" the product, plaintiffs' products liability and negligence claims had "no chance of success").

18. This is consistent with the law of California**.** *See Bockrath v. Aldrich Chemical Co.*, 980 P.2d 398, 404 (Cal. 1999) (plaintiff must allege that the named defendant "manufactured or supplied" the allegedly injurious product).

C. **The Forum Defendant Rule Does Not Prevent Removal**

19. In addition to demonstrating diversity of citizenship, a defendant removing a case on the basis of Section 1332(a) ordinarily must show that none of the "properly joined and served" defendants "is a citizen of the State in which such action is brought." 28 U.S.C. §

1441(b)(2). This is called the "forum defendant rule." *Hurley v. Motor Coach Industries, Inc.*, 222 F.3d 377, 378 (7th Cir. 2000).

20. Recognizing the need to protect the right of removal against abusive pleading practices, federal courts have applied the fraudulent joinder doctrine to ignore the joinder of in-state defendants against whom plaintiffs have no chance of success. *See Couzens v. Donohue,* 854 F.3d 508, 513 (8th Cir. 2017); *De La Flor v. Ritz-Carlton Hotel Co., L.L.C.*, 930 F. Supp. 2d 1325, 1328 (S.D. Fla. 2013); *Yellen v. Teledne Continental Motors, Inc.,* 832 F.Supp.2d 490, 501-03 (E.D. Pa.2011); *Bahalim,* 2017 WL 118418, at *4-5; *Sargent v. Cassens Corp.,* 2007 WL 1673289, at *3-4 (S.D. Ill. June 7, 2007). *See also Newby v. Wyeth, Inc.*, 2011 WL 5024572, at *2 (E.D. Mo. Oct. 21, 2011) ("When, as here, the basis for removing a case is diversity jurisdiction and the face of the complaint lacks complete diversity, in that the plaintiff has joined a non-diverse party ***or a resident of the forum state as a defendant***, the removing party may avoid remand only by demonstrating that the… party was fraudulently joined.") (emphasis added).

21. In *Couzens*, for instance, the Eighth Circuit held that "because the [in-state] defendants were fraudulently joined, the forum-defendant rule, 28 U.S.C. § 1441(b)(2), did not prohibit removal." *Couzens,* 854 F.3d at 513. Moreover, decisions of both the Seventh Circuit and Fifth Circuit have stated that the fraudulent joinder doctrine applies to cases in which an in-state defendant had been improperly joined to defeat removal. In *Schwartz v. State Farm Mut. Auto Ins. Co.*, 174 F.3d 875 (7th Cir.1999), the Seventh Circuit stated that a plaintiff "may not join an in-state defendant solely for the purpose of defeating federal diversity jurisdiction." *Id*. at 878. "Such joinder is considered fraudulent, and is therefore disregarded, if … there exists no 'reasonable possibility that a state court would rule against the [in-state] defendant.'" *Id*.

7

(quoting *Poulos,* 959 F.2d at 73 (bracketed text in *Schwartz*)). Similarly, in *Salazar v. Allstate Texas Lloyd's, Inc.*, 455 F.3d 571 (5th Cir. 2006), the Fifth Circuit stated that "under the fraudulent joinder doctrine, federal removal jurisdiction premised on diversity cannot be defeated by the presence of an improperly-joined nondiverse and/or in-state defendant." *Id*. at 574.

22. The applicability of the fraudulent joinder doctrine to cases involving in-state defendants was again discussed by the Seventh Circuit in *Morris v. Nuzzo*, 718 F.3d 660 (7th Cir. 2013). However, *Morris* did not decide whether the forum defendant rule barred removal in that case. Instead, the *Morris* court held that the District Court "erred in its determination" that the in-state defendant "was fraudulently joined," *id.* at 663, stating that the court was "convinced" that the defendant "was not fraudulently joined." *Id.* at 671.

23. Even though the Seventh Circuit did not decide *Morris* on the basis of the forum defendant rule, the court did lay out a number of "policy factors" the court deemed to be relevant in considering whether to apply the fraudulent joinder doctrine to disregard the presence of an in-state defendant. *Id.* at 668. These factors included "the plaintiff's right to select the forum," "the general interest in confining federal jurisdiction to its appropriate limits," "the defendant's statutory right of removal," and the "interest in guarding the removal right against abusive pleading practices." *Id*.

24. These same factors were subsequently further explained and applied in the Northern District's decision in *Bahalim*. 2017 WL 118418, at \*3-4. "After weighing all the *Morris* factors," the court determined that the fraudulent joinder doctrine should be applied in that case involving a forum defendant. *Id.* at \*4.

25. The same result follows from an application of the *Morris* factors to this case.

*Plaintiffs' Choice of Forum*

26. Although courts ordinarily will defer to plaintiff's choice of forum, the justification for such deference is "less compelling" when plaintiffs have "improperly joined a forum defendant" in order to defeat federal jurisdiction. *Bahalim*, 2017 WL 118418, at *3. This is because "[a]lthough a plaintiff is generally free to choose its own forum, a plaintiff 'may not join an in-state defendant solely for the purpose of defeating federal diversity jurisdiction.'" *Midland Mgmt. Co. v. Am. Alternative Ins. Corp.*, 132 F. Supp. 3d 1014, 1021 (N.D. Ill. 2015) (quoting *Schwartz*, 174 F.3d at 878).

27. Moreover, as in the *Bahalim* case, "deference to Plaintiffs' choice of forum is further weakened by the fact that neither Plaintiff is an Illinois citizen…" *Bahalim*, 2017 WL 118418, at *3. As the Seventh Circuit stated in *Morris*, courts "do not give automatic deference to a plaintiff's choice of state forum simply because the plaintiff has filed suit outside of his or her home state." *Morris*, 718 F.3d at 669. Here, Plaintiffs are both citizens of California. This is another reason why the Court should give "less deference to Plaintiffs' choice of forum under the facts of this case." *Bahalim*, 2017 WL 118418, at *3.

### *General Interest in Confining Federal Jurisdiction to Appropriate Limits*

28. In *Morris*, the Seventh Circuit indicated that one of the factors that can weigh against the application of the fraudulent joinder doctrine is "the general interest in confining federal jurisdiction to its appropriate limits." *Morris*, 718 F. 3d at 668.

29. Here, however, this factor weighs ***in favor*** of removal as opposed to against it. *First,* as the Seventh Circuit has repeatedly emphasized, the forum defendant rule itself is not jurisdictional. *Hurley*, 222 F.3d at 380. *See also Thornton v. M7 Aerospace LP,* 796 F.3d 757, 764 (7th Cir. 2015) (same); *Morris*, 718 F. 3d at 665 (same). Therefore, its application in

9

circumstances where the in-state defendant has been fraudulently joined cannot be necessary in order to confine federal jurisdiction to its appropriate limits.

30. *Second,* as the court in *Bahalim* recognized, the language of the removal statute embodying the forum defendant rule itself <u>supports</u> removal when an in-state defendant has been fraudulently joined. *See Bahalim*, 2017 WL 118418, at *3 (citing 28 U.S.C. § 1441(b)(2)). Section 1441(b)(2) provides:

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest ***properly joined and served*** as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b)(2) (emphasis added).

31. Accordingly, the *Bahalim* court found that, "by its own terms, the forum defendant rule precludes removal only when there is a 'properly joined and served' resident defendant." *Bahalim*, 2017 WL 118418, at *3. Based on the statutory language, the court in *Bahalim* joined other courts in holding "that a fraudulently joined forum defendant is an improperly joined defendant." *Id. See, e.g., Lozano v. CSM Bakery Prod. NA, Inc.*, 2016 WL 5746339, at *3 (C.D. Cal. Sept. 30, 2016) ("the 'properly joined and served' language, added to § 1441(b) in 1948, has widely been interpreted as reflecting Congressional intent to prevent the fraudulent joinder of forum defendants in order to avoid removal.").

### *Defendant's Statutory Right to Removal and Need to Guard Against Abusive Pleading Tactics*

32. In *Morris*, the Seventh Circuit warned that "a plaintiff could potentially use the forum defendant rule as a 'device' to defeat removal where an out-of-state defendant would otherwise have that right." *Morris*, 718 F.3d at 670; *See also Bahalim*, 2017 WL 118418, at *4. Similarly, the United States Supreme Court has made clear that "Federal courts should not sanction devices intended to prevent the removal to a Federal court where one has that right."

10

*Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907).  Apollo has that right. *See also Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 745 (2014) ("We have interpreted the diversity jurisdiction statute to require courts in certain contexts to look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction.").

33.     Given Defendant AbbVie's complete lack of involvement with the LAP-BAND® device at any time, *see* Point II.B, *supra*, Plaintiffs have no "reasonable possibility of success" against AbbVie. *Poulos*, 959 F.2d at 73.  Instead, Plaintiffs have added a party against whom they cannot "establish a cause of action," *id*. at 73 – AbbVie – as a device to thwart Apollo's statutory right of removal to federal court. *Bahalim*, 2017 WL 118418, at *4.

34.     It is particularly clear that AbbVie has been named merely as a device to defeat removal given that the Circuit Court in which Plaintiffs have chosen to file – the Third Judicial Circuit in Madison County – lacks any connection whatsoever with AbbVie, the Plaintiffs, Defendant Apollo, or any of the facts alleged in the lawsuit.  On the contrary, as Plaintiffs themselves allege, AbbVie has its principal place of business in North Chicago, *see* Exhibit A, Complaint at ¶ 5 – at the opposite end of the state from Madison County.[2]

35.     Indeed, Plaintiffs' counsel in this case has recently filed several other LAP-BAND® actions in Madison County – naming Apollo and Allergan USA, Inc., but **not** AbbVie –

---

[2] Given the lack of any connection between the State of Illinois and any of the parties other than the fraudulently joined AbbVie, Apollo expressly reserves its right to move to dismiss the case under Rule 12(b) for lack of personal jurisdiction, or in the alternative, to transfer the action to a more appropriate venue such as Delaware, Texas, or California under 28 U.S.C. §1404.

on behalf of plaintiffs residing in Texas, Montana, Nevada, Georgia, Alabama, Delaware, Tennessee, and Kentucky, none of whose cases had any connection with the forum.[3]

36.     Joining a defendant against which there is no legal or factual basis for recovery in an attempt to defeat federal jurisdiction represents precisely the kind of "abusive pleading practices," *Morris*, 718 F.3d at 668; *Bahalim*, 2017 WL 118418, at *4, that require application of the fraudulent joinder doctrine in order to protect Defendants' "*right* of removal." *Morris*, 718 F.3d at 669 (emphasis in original). As the court in the *Yellen* case emphasized, "a court cannot permit a plaintiff to join a straw-man defendant solely to deprive removal-eligible defendants of a federal forum to which they are otherwise entitled." *Yellen,* 832 F.Supp.2d at 503.

37.     After weighing all the *Morris* factors, including Plaintiffs' choice of forum, the applicable limits of federal jurisdiction, and Defendants' statutory right of removal, it is clear that Plaintiffs have named AbbVie as a device to improperly avoid removal to federal court.  *See Bahalim*, 2017 WL 118418, at *4.

**D.    The Amount in Controversy Exceeds $75,000**

38.     It is clear from the face of the Complaint that the amount in controversy exceeds $75,000, exclusive of interest and costs.

39.     Plaintiffs allege that Ms. Beardsley's LAP-BAND® had to be surgically removed on an emergency basis after the LAP-BAND® catheter had wrapped around Ms. Beardsley's small intestines causing a bowel obstruction. Plaintiffs also allege that the LAP-BAND® had

---

[3] The LAP-BAND® cases filed in Madison County by current Plaintiffs' counsel that do not name AbbVie are: *Kayter v. Allergan USA, Inc. and Apollo Endosurgery US, Inc.,* Case No. 2020L 000038*; Eastman, et al. v. Allergan USA, Inc. and Apollo Endosurgery US, Inc.,* Case No. 2020L 000232; and *Boswell et al. v. Allergan USA, Inc. and Apollo Endosurgery US, Inc.,* Case No. 2020L 000503.  Plaintiffs' counsel voluntarily dismissed each of those lawsuits within days of filing them.  Allergan USA, Inc. is incorporated in Delaware with its principal place of business in New Jersey, and therefore is not a citizen of Illinois.

eroded into Ms. Beardsley's stomach, causing sepsis, stomach perforation, and necrosis, and that Ms. Beardsley died of her injuries on December 28, 2018. *See* Exhibit A, Complaint, ¶ 1.

40. Plaintiffs further allege that Ms. Kipnis' LAP-BAND® eroded into her stomach, causing inflammation of her liver and stomach, necessitating surgery to remove the medical device. *See* Exhibit A, Complaint at ¶ 3.

41. Plaintiffs also allege that Mr. Beardsley, as next of kin to Ms. Beardsley, "suffered great losses of a personal and pecuniary nature, including loss of companionship and society of the decedent, as well as grief, sorrow, and mental suffering." *See* Exhibit A, Complaint at ¶ 315.

42. In their Prayer for Relief, Plaintiffs request, among other items of damages, compensatory damages for "past, present, and future damages, including, but not limited to, great pain and suffering for severe and permanent personal injuries sustained by Plaintiff and Decedent, health and medical care costs" and "all ascertainable economic and non-economic damages," "Punitive and Exemplary damages," and "attorney fees under the Illinois Consumer Fraud Act." *See* Exhibit A, Complaint at pages 92-93.

43. These alleged injuries are similar to others that have been found to satisfy the amount in controversy. *See Andrews v. E.I. DuPont De Nemours & Co.,* 447 F.3d 510 (7th Cir. 2006) (finding the jurisdictional amount requirement met where plaintiff alleged severe and permanent injuries, pain and suffering, and medical expenses). *See also Gebbia v. Wal-Mart Stores*, 233 F.3d 880, 888 (5th Cir. 2000) (alleged damages in a slip and fall case for "medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement" met the jurisdictional amount).

13

**III.     REMOVAL IS OTHERWISE PROPER**

44.     Plaintiffs commenced this action on October 1, 2020.  AbbVie was served on October 2, 2020, and Apollo was served on October 5, 2020. (*See* Exhibit B)  Therefore, this removal is timely pursuant to 28 U.S.C. § 1446(b)(2).

45.     Removal to the Southern District of Illinois, East St. Louis Division, is proper under 28 U.S.C. § 1446(a) because the Circuit Court for the Third Judicial Circuit for Madison County, State of Illinois, is within the East St. Louis Division.

46.     Written notice of the filing of the Notice of Removal will be promptly served on Plaintiffs' counsel, and a copy will be promptly filed with the Clerk of the Circuit Court for the Third Judicial Circuit for Madison County, State of Illinois pursuant to 28 U.S.C. § 1446(d).

47.     By filing this Notice of Removal, Defendants do not waive, expressly or implicitly, its right to assert any defense that it could have asserted in the State Court Action.

WHEREFORE, Defendants remove this case to the East St. Louis Division of the United States District Court for the Southern District of Illinois, from the Circuit Court for the Third Judicial Circuit for Madison County, State of Illinois.

Dated:  November 2, 2020                    Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

By: */s/ Dan H. Ball*
Dan H. Ball, IL #6192613
James Emanuel, Jr. #6325389
211 North Broadway, Suite 3600
St. Louis, MO  63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020
dhball@bclplaw.com

James C. Suozzo
Robert McGuirl
Robert Goodman
(to be admitted *Pro Hac Vice*)

14

LAW OFFICES OF ROBERT J. MCGUIRL, LLC
295 Spring Valley Road
Park Ridge, New Jersey 07656
Telephone: (201) 391-8200
Fax: (201) 391-8660
james.suozzo@rjmlaw.org
robert.mcguirl@rjmlaw.org
robert.goodman@rjmlaw.org

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November, 2020, the foregoing was filed and served via U.S. mail first-class postage prepaid and pursuant to the Court's ECF system, including service upon the following counsel of record:

Christopher W. Dysart
The Dysart Law Firm, P.C.
16020 Swingley Ridge Rd., Ste. 340
Chesterfield, MO  63017

*Counsel for Plaintiff*

<u>Dan H. Ball</u>